JOHN J. SHIPHERD

*v.*

WILLIAM ELIOT FURNESS *et al.*, Admrs.

*Filed at Ottawa October 29, 1894.*

1. STATUTES—*the word "trust," in act on administration, defined.* The word "trust," in the statute on administration, making "money received in trust" a claim of the sixth class, (Rev. Stat. par. 6, sec. 70,) does not embrace every confidence reposed, nor trusts implied by law from a contract, but applies to technical trusts, only.

2. ADMINISTRATION—*what not a "trust," within the sixth class.* The maker of notes, which were, in pursuance of a contract, endorsed and negotiated by a decedent to raise money for the maker's use in furnishing a hotel, cannot have the unsettled balance remaining in such decedent's hands at his death allowed against his estate as a claim of the sixth class.

*Shipherd* v. *Furness*, 46 Ill. App. 319, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

On February 25, 1889, John J. Shipherd, appellant herein, delivered to James M. Gamble a paper, as follows:

"CHICAGO, *Feb. 25, 1889.*

"The undersigned, owners of the capital stock of the Metropolitan Street Railway Company of Toledo, Ohio, to the amounts set opposite our respective names, in consideration of the sum of five hundred ($500) dollars to us in hand paid, the receipt of which is hereby acknowledged, hereby agree to sell and transfer to James M. Gamble, or his assigns, on demand, on or before the 25th day of May, 1889, all of said capital stock owned by us, upon receiving therefor the sum of one hundred and fifty thousand ($150,000) dollars in cash, the entire capital stock of the Palace Hotel Company of Chicago, being two hundred thousand ($200,000) dollars, and a properly executed deed of house No. 1019 Euclid avenue, Cleve-

land, Ohio, said Metropolitan Street Railway property and its franchises to be free, clear and unencumbered of all bonded indebtedness or other claims, including suits pending or which may be instituted on or before the payment of said sum of $150,000, the transfer of said Palace Hotel stock or the delivery of the deed of said Euclid avenue property. In case the property above mentioned shall not have been purchased and the transaction closed on or before the 25th day of March, 1889, then the said James M. Gamble shall pay to us the additional sum of five hundred ($500) dollars; and in case the said property shall not have been duly purchased and the transaction closed by the said James M. Gamble on or before the 25th day of April, 1889, then he shall pay to us an additional sum of five hundred ($500) dollars. In case the said property shall be duly purchased and the said transaction closed by the said James M. Gamble on or before the 25th day of May, 1889, then the said sum of fifteen hundred ($1500) dollars shall be applied as part of the purchase money thereof, and in case the said property shall not be purchased or the transaction consummated by the said James M. Gamble on or before the 25th day of May, 1889, or on or before such further extension of time as shall be given him by us, the said owners, who have subscribed this option, then the said sum of $1500 shall be forfeited, and we shall not, neither shall either of us, have any other claim whatever against the said James M. Gamble.

"Stock, $250,000.—Bond, $250,000.

JOHN J. SHIPHERD."

On .the same day, Gamble delivered to appellant a paper, as follows:

"CHICAGO, *Feb. 25, 1889.*

"In consideration of the agreement made this day by John J. Shipherd and others, with me, in relation to the sale to me, or my assigns, of the Metropolitan Street Railway Company of Toledo, Ohio, and upon the fulfillment of each and every of the stipulations in said agree-

ment contained, I hereby agree to loan the said John J. Shipherd, at current bank rates of interest, the sum of $10,000 or $15,000, or any sum not exceeding the sum of $25,000, should the same be needed for the furnishing and equipping of the Palace Hotel of Chicago. The amount to be loaned, as aforesaid, or procured to be loaned, by endorsement or otherwise, to continue for one year, if required, and to be secured by Palace Hotel stock or other satisfactory securities.        JAMES M. GAMBLE."

And also, on March 5, he delivered to appellant another paper, as follows :

"CLEVELAND, O., *March 5, 1889.*

"This may certify, that John J. Shipherd has this day executed to me his five (5) certain promissory notes, dated Cleveland, Ohio, March 5, 1889, each for the sum of $5000, payable three months after date, to my order, at the Union National Bank of Chicago, Ill., which notes are to be negotiated by me, and the proceeds thereof applied to the purchase of furniture and other necessary equipment of the Palace Hotel of Chicago, in accordance with the agreement made by me with said Shipherd, under date February 25, 1889. And I hereby agree to apply the proceeds of said notes for the purposes named. This agreement is collateral to said agreement of February 25, 1889.

JAMES M. GAMBLE."

Gamble received the notes and discounted them, attaching to each note a certificate for two hundred shares, of the nominal value of $20,000, of the capital stock of the Palace Hotel Company, as collateral. Following is a copy of one of this series of notes, of which all were alike :

"$5000.        CLEVELAND, OHIO, *March 5, 1889.*

"Three (3) months after date I promise to pay to James M. Gamble, or order, $5000 at the Union National Bank of Chicago, Ill., for value received, with interest at the rate of six per cent per annum, payable semi-annually, and hereby pledge to the said James M. Gamble, as se-

curity therefor, twenty thousand dollars ($20,000) of the stock of the Palace Hotel Company of Chicago, Ill., with authority to sell the same (or any collaterals substituted or added to the above) on the non-performance of this promise, at public or private sale, after giving ten days notice in one daily newspaper published in the city of Chicago, and to bid therefor and purchase the same of the highest and best bidder therefor, and apply the proceeds toward the payment of this obligation and the cost of notice and sale, accounting to him for the surplus, if any. In case of deficiency I promise to pay the said James M. Gamble the amount thereof, forthwith after such sale, with interest.                    Jno. J. Shipherd."

Endorsed, "Jas. M. Gamble," "Palace Hotel Co.—Jas. M. Gamble, Tr."

The notes were not paid when due, and appellant gave to Gamble another set of five notes of the same amount, with which Gamble took up the original five, attaching the same certificates of stock to the second set, as collateral. Following is a copy of one of the second set, which were all alike :

"$5000.                    New York, *May 3, 1889.*

"On September 3, 1889, after date, and upon return of securities given, I promise to pay to James M. Gamble or order, at the Union National Bank, Chicago, Ill., $5000, for value received, with interest at six per cent per annum, having deposited with him as collateral security twenty thousand ($20,000) of stock of the Palace Hotel Company of Chicago, Ill., with authority to sell the same, or other security subsequently substituted, at the Board of Brokers, or at public or private sale, at their option, on the non-performance of this promise, and without further notice, applying the net proceeds to the payment of this note, including interest, and accounting to me for the surplus, if any. In case of deficiency I promise to pay to

153—38

the said James M. Gamble the amount thereof, forthwith after such sale, with legal interest.

"*Cleveland, Ohio.*       JNO. J. SHIPHERD."

Each of the notes of this second series was endorsed "James M. Gamble," "Palace Hotel Co., by C. P. Newberry, Pres.," "C. P. Newberry." Appellant has paid a part of the second series of notes, and the collaterals attached to such as were paid have been delivered to him. The remaining notes, in so far as the record discloses, are as yet unpaid.

Gamble died on June 15, 1889, while the agreement of February 25, for the transfer by him to appellant of all of the capital stock of the Palace Hotel Company, was still executory. The appellees are his administrators. Appellant filed his claim in the probate court of Cook county, against the estate of Gamble, for the total amount represented by the second series of five notes, principal and accrued interest, and sought to have it allowed as a claim of the sixth class. The claim was contested by appellees, and the probate court refused to allow it as a claim of any class, as did likewise the circuit court, to which the cause was appealed. Appellant thereupon appealed to the Appellate Court for the First District, where the judgment of the circuit court was affirmed, counsel for the respective parties having filed a stipulation agreeing that if the claim should not be allowed as of the sixth class the judgment of the circuit court should be affirmed. Appellant now appeals from the judgment of the Appellate Court.

Mr. W. A. HAMILTON, for the appellant:

The statute goes upon the theory that trust property belongs, not to the trustee, but to the *cestui que trust.* The statute separates from the mass of his property that which was in his hands but was in no sense his. *Snodgrass* v. *Moore,* 30 Mo. App. 232; *Pennell* v. *Deffel,* 4 DeG., M. & G.

372; *People* v. *City Bank,* 96 N. Y. 32; *McCloud* v. *Evans,* 66 Wis. 401.

A banker who accepts for collection a draft, and collects the money on it, holds it as trustee for the owner, and after assignment for the benefit of creditors the trust character still adheres to the fund in the hands of the assignee, even though it cannot be traced into any specific property. *Harrison* v. *Smith,* 83 Mo. 210; *Stollar* v. *Coates,* 88 id. 514; *Taylor* v. *Plumer,* 3 M. & S. 562.

The following cases, which hold that commercial transactions are not trusts, are not in fact adverse to appellant: *Wilson* v. *Kirby,* 88 Ill. 566; *Cook* v. *Tullis,* 18 Wall. 332; *Chapman* v. *Forsyth,* 2 How. 202; *Doyle* v. *Murphy,* 22 Ill. 502; *Weer* v. *Gand,* 88 id. 493.

The following cases do not, in any sense, conflict with the others,—they simply say that trusts exist where the element of commerce or profit does not enter into the transaction: *King* v. *Hamilton,* 16 Ill. 190; *Robey* v. *Colehour,* 135 id. 337; *Weaver* v. *Fisher,* 110 id. 146; *Matteson* v. *Kellogg,* 15 id. 547; *School Trustees* v. *Kerwin,* 25 id. 62; *Clapp* v. *Emery,* 98 id. 523; *Cassell* v. *Fitzsimmons,* 6 Ill. App. 525.

Mr. DAVID FALES, for the appellees:

The moneys received by decedent from the sale of the notes of appellant do not come under the provisions of the statute which allow any preferred claim therefor, nor do they establish such a trust as is contemplated by clause 6, section 70, chapter 3, of the statutes. *Wilson* v. *Kirby,* 88 Ill. 566; 1 Perry on Trusts, sec. 1; *Chapman* v. *Forsyth,* 2 How. 202; *Fitzsimmons* v. *Cassell,* 98 Ill. 332, and 104 id. 352.

If the proceeds constituted a trust fund only, the *cestui que trust* could pursue and recover the same in a court of equity, which, in the case at bar, if there were a trust, would be the Palace Hotel Company or its creditors. *Doyle* v. *Murphy,* 22 Ill. 502; *State* v. *Clarke,* 77 id. 471; *Vallette* v. *Bennett,* 69 id. 632.

Mr. Justice Baker delivered the opinion of the court:

Paragraph 6 of section 70, chapter 3, of the Revised Statutes, is as follows:

"*Sixth*—Where the decedent has received money in trust for any purpose, his executor or administrator shall pay out of his estate the amount thus received and not accounted for."

The question presented by this record for our determination is, whether or not appellant's claim against the estate of Gamble should have been allowed as a preferred one, under the clause of the statute above quoted.

It has been decided by this court that the word *trust,* appearing in said statute, is to be taken as used, not in its broader sense, as embracing every case in which a confidence has been reposed, but in its more restrictive sense; that the statute applies to technical trusts only, and has no application to trusts which the law implies from a contract. (*Wilson et al.* v. *Kirby,* 88 Ill. 566.) In deciding the *Wilson* case this court adopted the reasoning followed in *Chapman* v. *Forsyth,* 2 How. 202; and in *Cronan* v. *Cotting,* 104 Mass. 245. The case of *Svanoe* v. *Jurgens,* 144 Ill. 507, is to the same effect, as are also other cases decided by this court and cited therein.

It seems that appellant, who contemplated the purchase of the Palace Hotel, as evidenced by the agreement of February 25, desired to complete the equipment and furnishing of it, to be enjoyed by him when such purchase should have been consummated; that he had no money to expend for that purpose, and so he executed the five notes of the first series to Gamble, who was to negotiate the same and use the proceeds thereof in furnishing and equipping the hotel, as also evidenced by the said agreement of February 25; that Gamble, in pursuance of said agreement, endorsed said notes and sold them, depositing with each note capital stock of the Palace Hotel Company, of the nominal value of $20,000, as collateral.

The proceeds realized from the negotiation of the notes were deposited by him in bank, to the credit of the Palace Hotel Company. Furniture, etc., to the amount of many thousands of dollars, was purchased by Gamble from time to time, during the spring of 1889, for the Palace Hotel, but what portion thereof was purchased subsequently to March 5, the date of the execution of the first series of notes, does not appear. Such purchases were not paid for in cash, but were made upon the credit of the Palace Hotel Company. Gamble, personally, guaranteed payment of the purchase money. He afterwards paid about $3000 of the amount so due, but it does not appear that this $3000, or any portion of it, was a part of the money realized upon appellant's notes. What became of that money is not shown.

The relation of the parties to each other, it would seem, was that of principal and agent. Gamble, who assisted appellant in raising the $25,000, was to apply it in equipping and furnishing the Palace Hotel in behalf of appellant, who expected that the agreement of February 25, for the transfer to him of said hotel, would soon be executed, and that he would then soon come into possession of it. Of course, from the very nature of the transaction, appellant must have reposed confidence and faith in Gamble in order to have entrusted him with the expenditure of so large a sum of money; but it by no means follows that Gamble was, technically speaking, a trustee, for every reposing of confidence does not constitute a trust. Gamble was, of course, responsible for the fund so placed in his hands, and his estate is liable to account therefor. But we are of the opinion that the transaction did not constitute a *trust*, unless it were merely such an one as the law would imply from the contract. Inasmuch, however, as it is settled that the sixth clause of the statute in question does not apply to such a trust, it follows that there was here no such trust as would warrant the allowing of appellant's claim as a

preferred one of the sixth class. *Wilson et al.* v. *Kirby, supra; Svanoe* v. *Jurgens, supra; Weer* v. *Gand,* 88 Ill. 493; *Doyle* v. *Murphy,* 22 id. 502; *Chapman* v. *Forsyth, supra.*

Appellant is entitled to have his claim allowed against the estate of Gamble as a claim of the seventh class, but as the parties agree that if the claim shall not be allowed as one of the sixth class then the judgment of the Appellate Court shall be affirmed, since such claim would not be of sufficient value to justify the cost of litigation, and desire this court to act upon such agreement, the judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*