TIEDEMAN & BROTHER *et al. v.* IMPERIAL FERTILIZER COMPANY *et al.*

109  661
116  845
109  661
p118  405
109  661
119  904

1. Where the owner of notes placed the same in the hands of another for collection, and the bailee, having made collections, failed to remit the proceeds, the claim of the owner of the money collected was, in a general sense, in the nature of a fiduciary debt, but not such an one as entitled him to a priority over the claims of general creditors in the distribution of the assets of the bailee who had become insolvent.
2. The distribution in the present case was that of the assets of an insolvent partnership, and not of the estate of an intestate.

Argued November 9, 1899. — Decided January 30, 1900.

Equitable petition. Before Judge Smith. Wilcox superior .court. February 1, 1899. ·

*Cutts & Lawson, T. L. Holton,* and *Dasher, Park & Gerdine,* for plaintiffs.   *Thomson & Whipple, D. B. Nicholson, T. C. Wells,* and *Harrison & Bryan,* for defendants.

LITTLE, J.   The exception taken which raises the question to be decided in this case is to so much of a final decree as gives priority to two certain claims over general creditors in the distribution of funds in the hands of a receiver.   Weeks & Reid, a mercantile firm, were indebted to various parties.   Weeks conveyed his interest in the firm property to Reid, and Reid then made a conveyance to Nicholson as assignee, for the benefit of the firm creditors.   This instrument embraced the entire property and assets of the firm, and made two of its creditors, to wit The Imperial Fertilizer Company and J. S. Woods & Brother, preferred creditors.   Certain general creditors instituted an equitable proceeding to set aside the deeds of assignment.   Reid having died during the pendency of the case, Nicholson, his administrator, was made a party defendant.   It also appears that, under the proceedings instituted, Nicholson was appointed receiver and took charge of the assets of the firm, and under order of the court reduced the same to money.   The two preferred creditors, the Imperial Fertilizer Company and J. S. Woods & Brother, set up, by their respective answers, that the firm of Weeks & Reid had bought from them commercial fertilizers, and had deposited with said defendants certain customers' notes of considerable amount, as collateral to secure the payment of the notes given by the firm for the fertilizers; that when these collateral notes became due, the defendants had sent them to the firm of Weeks & Reid for collection, the proceeds of which were to be remitted to the defendants; that the firm collected a very considerable amount on said collateral notes, but failed to pay the proceeds to the defendants, and used the same in their business; that the assets of the firm had been reduced to cash; and that the defendants were in law and in equity entitled to a lien on the firm assets, and the proceeds arising therefrom, superior to the claim of the other creditors, theirs being a trust debt.   They also claimed that the deeds of assignment which gave them a preference were legal and valid.   At the hearing a bill of sale made by Weeks to Reid was intro-

duced, containing the following clause: " I hereby bargain, sell, assign, and convey to S. J. Reid all my right, title, and interest in the business of Weeks & Reid, and all the goods, wares, and merchandise, store fixtures, notes, and accounts due the business, and all other property owned by said firm of Weeks & Reid ; and said S. J. Reid assumes all the debts due by Weeks & Reid, and agrees to make an assignment of all his property to pay the same. "    All questions of law and fact were left to the decision of the judge, who determined that the deeds of assignment made by Reid to Nicholson were void and passed no title out of Reid as against any of the creditors, and that the plaintiffs, who were creditors of the firm of Weeks & Reid, should respectively have judgments for the amounts due each, against Weeks, surviving partner, and Nicholson, administrator of Reid, there being no question as to the amount of the debts due to each of said creditors ; and further, that the debts of Woods & Brother and the Imperial Fertilizer Company were of higher dignity and had priority over the general creditors to whom judgments were thus given.    The fund not being sufficient to pay all the debts, the receiver was directed to pay the amount of the debt of Woods & Brother and the Imperial Fertilizer Company in full, before any payment should be made to the other creditors.    To so much of the decree as gave this priority the plaintiffs in error excepted.

Evidently the judge framed his decree distributing the money in the hands of the receiver on the theory set up in the answers of Wood & Brother and the Imperial Fertilizer Company, that theirs were trust debts.    In support of that contention, we have been referred to sections 2790, 3189, and 3424 of the Civil Code.    The first two of these provide that liens against trustees dying chargeable with trust funds take priority over all other liens and claims except funeral expenses.    The third is the general statute which fixes the priority of debts against the estate of a decedent, and declares that any debt due by the deceased as a trustee, having had actual possession, control, and management of the trust property, shall take priority immediately after unpaid taxes, and before judgments, liens, and other debts.    A trust may arise in different ways.    If one uses

the funds of another in the purchase of property, taking title thereto in his own name, as a general rule it will be held that the purchaser holds the property, thus acquired, in trust for the benefit of the owner of the funds.    Such is known as a resulting trust, which is sometimes spoken of as an equitable lien, and while it is, the lien extends no further than the property acquired with the money of the other.    Such a lien can only be enforced against the specific property in which the funds were invested.    The claim of lien in this case, however, is based not on any specific item of property bought with the funds collected, but rests on the general proposition that the money was in law held by the firm in trust for its owners, and being so, a priority exists in their favor.    We are confident that such a contention is not sound, and that the facts if admitted to be true do not create such a trust debt as is contemplated by either of the sections of the code to which reference has been made. Weeks & Reid did not hold any property of the defendants in error in trust, in the sense contemplated by the statute.    The latter had certain notes which were sent to the former for collection, under a contract that the proceeds were to be forwarded to them.    These facts created an agency.    It seems that the firm, after collecting certain of the notes, did not observe their obligations to forward the money, which was, of course, the money of the defendants in error; they could have recovered a judgment for it in a suit as for a debt, or, had they been able to identify the particular funds, separate and apart, they could have recovered the specific funds; and while in a general way the debt might be classed as a debt arising out of à fiduciary relation, it was not such a trust debt as gave priority of payment.    In the case of *Southern Star Lightning Rod Co.* v. *Cleghorn*, 59 *Ga.* 782, this court held that, "In the distribution of the estate of a deceased attorney at law among creditors, a claim for money collected by him professionally, and never paid over to his client, is not entitled to rank as a debt due by the deceased 'as trustee having had actual possession, control and management of the trust property.'"    In the opinion delivered by Judge Bleckley in that case it was said : "An attorney's possession of the money of his client is more like that of a mere

agent or bailee. It would be deviating from the ordinary use of language to call the client's money trust property; and the sole duty of the attorney, in respect to it, is to pay it over. He has no right to control and manage it as trustee in possession. In this regard, his powers do not extend beyond those of an attorney in fact appointed to collect; and the latter is not a technical trustee." In the case of *Bowen* v. *Johnson*, 12 *Ga.* 9, where one had executed a power of attorney to another to sell and convey a tract of land, this court held that such a contract created a mere agency, and, where under it a sale was made and the purchase-price collected by the agent, that the agent held the money for the use of his principal, and the latter could have sued for it at once, and no trust of any kind was created. See also *Schofield* v. *Woolley*, 98 *Ga.* 548.

Under the facts here, the debtors were the agents of their creditors to make collection of the notes turned over to them. Their duty was not only to collect, but to pay over. There was nothing to manage, nothing to control. The statutes which have been quoted can have no application in a case like this; they apply only when the claim for which priority is given is against a trustee proper, one in whom the title is vested in trust for other persons, and whose duty it is to make returns to the ordinary under the provisions of the code. *Lightning Rod* case, supra. It is contended, however, that if the debts of the defendants in error are not such technical trust debts as entitle them to priority of payment over the general creditors, their debts are represented by promissory notes, while the debts of the other creditors are represented only by open account, and that for this reason they are entitled to priority. We think this contention can not be maintained. As a matter of fact, no estate of a decedent was being distributed under the proceedings here. Weeks, one of the partners, is in life; Reid, the other partner, is deceased. If the deeds of assignment were good, they did not have the legal effect of vesting the title conveyed by Weeks absolutely in Reid. On the contrary, he would hold the property conveyed as a trustee for the creditors of the firm. But it was adjudicated in this case that the deeds were void and should be set aside, and no exception was taken to

this finding, the effect of which is to leave the title where it was before Weeks made the conveyance, that is, in the firm of Weeks & Reid.   And the proceeding is not to distribute the estate of a decedent but of an insolvent partnership, in which case we know of no law which creates a preference in favor of holders of a promissory note without a lien.   That the debt has none as being a trust debt we have endeavored to show.   The court erred in awarding a preference to the debts of the defendants in error over other unsecured creditors.

*Judgment reversed.   All the Justices concurring.*