PARLIN *et al.* *v.* McCLURE, administratrix.

No. 7145. December 13, 1929.

*F. M. Scarlett,* for plaintiffs in error.
*Colon J. Cogdell* and *J. T. Powell,* contra.
Beck, P. J. Deborah McClure as administratrix of her deceased

husband, Winser McClure, filed her petition against Tommie Parlin and Peggy McClure Henderson, alleging that Winser McClure died on February 5, 1928, leaving the plaintiff and a minor child as his only heirs; that Winser McClure, when about twenty years old, purchased a certain tract of land (being the property in controversy), and was advised by his mother, Peggy McClure Henderson, that it would be better to have the title to the property conveyed to her, and she agreed to take and hold title to said property and to reconvey it to her son at any time after he became of age; that a short time before her death, and many times in the interval between the date of the purchase and the date of her death, she recognized that she was to reconvey the property to Winser McClure; that the latter furnished the money to pay the taxes upon the property; that on May 12, 1928, she sold and conveyed the land to Tommie Parlin for $300, though the land was then and is now worth $2,000; that Parlin, knew that plaintiff's intestate was the real owner of the land and that his money had paid for it. Petitioner prayed that the title to the property in question be decreed to be in the estate of Winser McClure. The defendants filed a general demurrer, and to a judgment overruling the same they excepted.

In the Civil Code, § 3739, it is declared that, "Trusts are implied: 1. Whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money or other circumstances, is either wholly or partially in another. . . 2. Where, from the nature of the transaction, it is manifest that it was the intention of the parties that the person taking the legal title shall have no beneficial interest." In *Manning* v. *Manning*, 135 *Ga.* 597 (69 S. E. 1126), it was said: "The allegations are that the land was purchased with money belonging to the two plaintiffs and the defendant William N. Manning, during their minority, but that the deed was made to their mother. If the title was acquired by the mother under these circumstances, she held the land in trust for the beneficiaries whose money was used in paying for it, and the cestuis que trustent may maintain an equitable petition for the purpose of declaring the trust. The subsequent conveyance by the mother to the defendant William N. Manning, if taken with notice of the plaintiffs' equity, would not deprive the plaintiffs of their remedy. A purchaser from one whose title is subject to

the equity of another, and who has notice of such equity, takes the land burdened with the equity. In the hands of any but an innocent purchaser of the property, the fiduciary character clings to it. 27 Am. & Eng. Enc. Law, 251; *Maddox* v. *Oxford,* 70 *Ga.* 179." In *Wilder* v. *Wilder,* 138 *Ga.* 573 (75 S. E. 654), it was held: "If a mother buys lands with her own funds and causes the title to be made to her son under an understanding and agreement that the property is to be hers, and that the son will make to her such conveyance as she may require, a trust in favor of the mother will be implied." In the opinion in that case the court said: "The answer sets up that the money of the defendant, acquired from her own earnings and from gifts of her sister and son, was used in the purchase of land, and that, though she caused the legal title to be taken in the name of the son, she was actuated to this course because she was a widow, and regarded her son as the man of the house, but that it was the common understanding and agreement of all parties concerned that she was to be the real owner, and that the son should make her a conveyance whenever required by her." In *Gillespie* v. *Gillespie,* 150 *Ga.* 106 (102 S. E. 824), it was said, upon the same subject as that dealt with in the decisions previously cited: "One of the plaintiff's prayers was that the court decree the title to the land to be in the plaintiff, and another was for specific performance. If $3,000 of the plaintiff's money, as she contends, was used to purchase the land in question and the other was raised by loans, and the lender was secured by a mortgage or security deed, and it was the understanding that while a deed was to be taken from the vendor conveying to the defendants, the land was to be the property of the petitioner, then a resulting trust was created and the beneficial interest in the property was in the plaintiff." In *Teasley* v. *Bradley,* 110 *Ga.* 497 (35 S. E. 782, 78 Am. St. R. 113), the court said, Justice Cobb delivering the opinion: "As long as a person who is in possession of the property of another, using the same for the owner's benefit, recognizes the latter's ownership, no lapse of time will bar the owner from asserting his title as against the person in possession. Before any lapse of time will be a bar to the owner; it must appear that the person in possession has given notice, or there must be circumstances shown which would be equivalent to notice, to the owner that the person in possession claims adversely to him. In such a case the statute will begin to run from

the date of such notice. Until the owner has such notice he has the right to treat the possession of the person as his own. *Keaton* v. *Greenwood,* 8 *Ga.* 97. This is the principle at the foundation of that familiar rule now embodied in the Civil Code, § 3198, that 'subsisting trusts, cognizable only in a court of equity, are not within the ordinary statutes of limitation.' Chancellor Kent in Kane *v.* Bloodgood, 7 Johns. Ch. 90, s. c. 11 Am. D. 417, states the same rule in the following language: 'The trusts intended by the courts of equity not to be reached or affected by the statute of limitations are those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of this court.' Although the rule just stated is applicable in terms alone to cases of technical trusts which are cognizable only in a court of equity, the principle upon which it is founded is applicable in some cases where a technical trust had not been created; the principle being, as above stated, that as long as one recognizes that property in his possession belongs to another, the latter has the right to treat the possession as his own."

Under these decisions, and others of like import that might be cited, the court did not err in overruling the demurrer. If the allegations of the petition are sustained, there was a resulting trust created in favor of the plaintiff's intestate when his mother received the deed conveying the title to the property in question to herself; and the property was still impressed with this trust and it was enforceable against the vendee, Tommie Parlin, if, as alleged in the petition, he took it with knowledge of the facts out of which the resulting trust arose.

*Judgment affirmed. All the Justices concur.*

GILBERT, J., concurring specially. The demurrer to the petition is general and not special. There is no prayer for specific performance. Construing the allegations of the petition that Winser McClure was a minor and "was advised by his mother . . that it would be better to have the title to the property conveyed to her, and that she agreed to take and hold title to said property and would reconvey the same to her son at any time after he became of age," as setting out acts of fraud upon the part of the mother, the petition sets out a cause of action authorizing a decree to the effect that the payment of the purchase-price by the son, a minor, created an implied trust that will be impressed upon the land for

the benefit of such minor son or his estate upon his death. The language of the petition quoted above can not be construed as a contract, for two reasons: first, the minor was unable to contract; and second, an express trust can not be created by parol. Civil Code (1910), § 3733; *Pound* v. *Smith*, 146 *Ga.* 431 (96 S. E. 1038); *DeLoach* v. *Jefferson*, 142 *Ga.* 436 (83 S. E. 122). If there is anything to the contrary in the *Wilder* case, 138 *Ga.* 573 (supra), or in the *Gillespie* case, 150 *Ga.* 106 (supra), it is sufficient to say that neither of them was a full-bench decision. *Manning* v. *Manning*, 135 *Ga.* 597 (supra), is binding authority. The question of laches would be for the jury to determine.